REVISED August 11, 2008

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-20440

JONATHON C. MCINTOSH, DDS

Plaintiff-Appellant

v.

DAVID PARTRIDGE, MD, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

GARWOOD, Circuit Judge:

Jonathon McIntosh, DDS, appeals the district court's April 30, 2007 summary judgment based dismissal of his suit under the Uniformed Services Employment and Reemployment Rights Act (USERRA), the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and Texas common law defamation. For the following reasons, we direct that the USERRA claim be dismissed for want of jurisdiction, and we otherwise affirm.

## FACTS AND PROCEEDINGS BELOW

McIntosh was the director of dentistry and the treating dentist for the residents at the Richmond State School (RSS), a Texas home for people with mental and physical disabilities. RSS is a part of the Texas Department of Aging and Disability Services (TDADS). David Partridge, M.D., was the medical director of RSS and McIntosh's direct supervisor; Adalberto Barrera was the superintendent of RSS.

McIntosh was a member of the U.S. Navy Reserve, and he was called to active duty to serve in Iraq and Kuwait in October 2004. RSS contracted with another dentist, June Sadowsky, D.D.S., M.P.H., to treat the residents during McIntosh's tour of duty. Dr. Sadowsky reported that the residents' teeth were in poor condition, some having been neglected to the point where they needed to be cleaned before their conditions could be properly assessed. In early 2005, Dr. Corinne Scalzitti, D.M.D., conducted an audit of the professional aspects of RSS's dental clinic, after which she concluded that decisions made by McIntosh had impaired the quality of dental care at RSS.

When McIntosh returned from military service in October 2005, he notified Partridge of his desire to return to his position at RSS. On November 1, 2005, Partridge told McIntosh that his clinical privileges were suspended pending an independent investigation into charges of professional incompetence and violations of the applicable standard of care. Partridge placed McIntosh on paid leave, and he reported McIntosh's conduct to the state board of dental examiners. McIntosh requested a hearing from RSS to review his suspension, but none was held. On December 23, 2005, McIntosh brought this suit against Partridge, both individually and in his official capacity as medical director of RSS, asserting claims under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4311(a), the Equal Protection

and the Due Process Clauses of the Fourteenth Amendment, and Texas common law defamation.[1]

Meanwhile, RSS hired Robert Anderton, D.D.S., J.D., to conduct an independent investigation of the allegations against McIntosh. As part of this investigation, he reviewed the residents' dental health and concluded that many residents suffered from extensive dental problems that were not properly treated or recorded on their charts by McIntosh. On August 24, 2006, Barrera provided McIntosh with a copy of Dr. Anderton's report and gave him the opportunity to present a response either in writing or in person by August 31, 2006. McIntosh declined this offer, but he subsequently requested, and was granted, an opportunity to submit a written response to the allegations. McIntosh submitted his response on September 6, 2006. After reviewing McIntosh's response, Barrera terminated McIntosh on September 8, 2006. McIntosh filed a formal grievance with the Health and Human Services Commission on September 25, 2006. The grievance was submitted to a neutral adjudicator. At the request of both parties, the grievance process was abated on October 18, 2006, pending the resolution of this lawsuit.

In the proceedings below, McIntosh's state law defamation claim was dismissed either upon McIntosh's own motion or for failure to state a claim because Partridge, as McIntosh's employer, had a qualified privilege to report allegations of misconduct to the state board of dental examiners and he did so without malice. Partridge then moved for summary judgment on the USERRA, equal protection, and due process claims, arguing that McIntosh could not establish that his suspension was motivated by his military service or that his constitutional rights were violated. McIntosh filed a cross-motion for partial

---

[1] The suit was originally filed in the United States District Court for the Southern District of Texas, Galveston Division, where it was assigned Civil Action No. G-05-0683. On June 6, 2006, it was transferred sua sponte by the district judge to the Houston Division where it was given Cause No. H-06-1968 and assigned to a different district judge.

summary judgment asserting that his equal protection and due process rights were violated because Partridge failed to grant him a hearing, as required by department procedures, before suspending him. Partridge also filed an amended motion to dismiss contending, inter alia, that the district court lacked subject matter jurisdiction over the USERRA claims and that the Eleventh Amendment barred claims against Partridge in his official capacity.

In its April 30, 2007 Opinion on Summary Judgment, the district court held that 38 U.S.C. § 4323 provided for federal jurisdiction over McIntosh's USERRA claim against Partridge, that Texas's sovereign immunity did not bar the suit from being brought in federal court, that McIntosh failed to establish that his termination was related to his military service, and that McIntosh's due process and equal protection rights were not violated. On that same day, the district court entered a judgment that McIntosh take nothing from Partridge in either his individual or official capacity.

On May 11, 2007, McIntosh filed a motion for reconsideration, which was denied on May 30, 2007. McIntosh timely filed his Notice of Appeal on June 5, 2007. Pursuant to Federal Rule of Appellate Procedure 44(a), Partridge filed a notice with this court that he would be asserting that McIntosh's USERRA claim was barred by the Eleventh Amendment. The United States intervened to defend the constitutionality of USERRA.

## DISCUSSION

On appeal, McIntosh argues that the district court erred by granting Partridge's motion for summary judgment as to his USERRA, due process, and equal protection claims. He also asserts that the district court erred by improperly considering inadmissible evidence submitted with Partridge's motion for summary judgment and by dismissing his state law defamation claim based upon an affirmative defense that Partridge had failed to raise in his first responsive pleading.

Standard of Review

This court reviews "Eleventh Amendment immunity determinations, like other questions of subject matter jurisdiction, de novo as a question of law." United States v. Tex. Tech. Univ., 171 F.3d 279, 288 (5th Cir. 1999). A district court's grant of summary judgment is reviewed de novo under the same standard applied by the district court. Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 (5th Cir. 1995). Summary judgment is appropriate when no disputed issue of material fact exists and the movant is entitled to a judgment as a matter of law. Id. Fact issues are viewed in the light most favorable to the nonmovant. Id. We review evidentiary rulings of the district court for abuse of discretion. Celestine v. Petroleos de Venez. SA, 266 F.3d 343, 349 (5th Cir. 2001).

I.    Federal Jurisdiction Over USERRA Claims Brought by an Employee Against a State as an Employer

USERRA is a federal law that protects employees from being discriminated against by their employers because of their military service. 38 U.S.C. § 4311. McIntosh argues that he was suspended and ultimately terminated from his position at RSS because of his military service in Iraq, and thus he brought a claim of discrimination under USERRA against Partridge, in his official capacity as medical director of RSS.[2] Partridge and the United States argue that 38 U.S.C. § 4323(b)(2) strips the federal courts of jurisdiction over suits by an individual against a state as an employer, and that the district court erred by not dismissing McIntosh's USERRA claim for lack of subject matter jurisdiction.

USERRA's operative text lays out three separate types of claims and identifies which courts have jurisdiction over those claims.

---

[2] While the briefing was unclear on this point, at oral argument, McIntosh conceded that he was not pursuing a USERRA claim against Partridge in his individual capacity.

"(1) In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action.

(2) In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State.

(3) In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action." 38 U.S.C. § 4323(b).

All parties agree that McIntosh's cause of action falls under subsection (b)(2) of this statute.

In its order, the district court reasoned that, since the statute provides that suits by individuals against a state "may," rather than "must," be brought in state court, Congress was not restricting jurisdiction to state courts. Based on its interpretation of the word "may," and because the previous version of the statute mandated federal jurisdiction over USERRA claims brought by individuals against states as employers, the district court concluded that McIntosh's USERRA claim could be brought in either state or federal court.[3] This reasoning, however, departs from the proper standard for determining abrogation of sovereign immunity. The Supreme Court has held that "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." Atascadero State Hosp. v. Scanlon, 105 S.Ct. 3142, 3147 (1985). The district court erred by assuming that federal jurisdiction existed because the

---

[3] McIntosh argues that the district court properly exercised jurisdiction because the TDADS is a political subdivision of the State of Texas, so it should be treated the same as a private employer. This argument is incorrect. Under Texas law, agencies of the state are entitled to claim sovereign immunity. Tex. Dep't of Health v. Hejl, 635 S.W.2d 656, 657-58 (Tex. App.—Austin 1982, no writ). Of course, a state department or agency (and its officers sued for damages in their official capacity) is considered as being the state for purposes of the Eleventh Amendment. See, e.g., Hurst v. Texas Dept. of Assistive & Rehab. Servs., 482 F.3d 809 (5th Cir.), cert. denied, 128 S.Ct. 490 (2007).

statutory text did not expressly limit jurisdiction solely to state courts. Under Atascadero, Congress must affirmatively and clearly grant jurisdiction to federal courts to abrogate state sovereign immunity.

USERRA's jurisdictional statute provides that in "an action against a State (as an employer) by a person, the action may be brought in a State court." 38 U.S.C. § 4323(b)(2) (emphasis added). This language provides no indication that Congress intended for these cases to be brought in federal court.[4] This omission is significant when compared with Congress's explicit provision for federal jurisdiction in cases where the federal government brings an USERRA claim or when the defendant is a private employer. 38 U.S.C. § 4323(b)(1), (3). These provisions demonstrate that Congress knew how to provide for federal jurisdiction but specifically chose not to do so for USERRA claims brought by individuals against states as employers. The Seventh Circuit has interpreted the statute in a similar manner. See Velasquez v. Frapwell, 165 F.3d 593, 594 (7th Cir. 1999) (per curiam) (holding that "Congress's intention to limit USERRA suits against states to state courts is unmistakable").

This interpretation is also supported by a comparison of the current statute with its prior version. Previously, Congress had authorized the United States district courts to exercise jurisdiction over USERRA claims, with claims against a state as an employer to be brought in "any district in which the State exercises any authority or carries out any function." 38 U.S.C. § 4323(b) (amended 1998). By amending the statute to its current form, Congress removed the blanket grant of jurisdiction to federal courts over all USERRA claims, and

---

[4] McIntosh cites various pieces of legislative history to support his argument that Congress intended to waive state sovereign immunity, but none of the passages clearly show congressional intent to allow states to be sued in federal court. An equally plausible reading of the cited passages is that Congress was attempting to amend USERRA in the wake of Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), to ensure that states could still be sued, even if those suits had to be brought in state court or by the federal government in federal court.

replaced it with a provision that only mentions the ability of individuals to bring claims against states as employers in state court. If we were to hold that the removal of the statutory language authorizing federal jurisdiction for these suits did not actually remove federal jurisdiction, we would be violating a basic tenant of statutory construction: "when Congress amends a law the amendment is made to effect some purpose." Argosy Ltd. v. Hennigan, 404 F.2d 14, 20 (5th Cir. 1968).

After examining the text of the statute in its current and prior forms, we see no "unmistakably clear" intention by Congress to abrogate state sovereign immunity by allowing individuals to bring USERRA claims against states as employers in federal court. Therefore, this court does not have jurisdiction to hear McIntosh's USERRA claim.[5]

II.     Did the District Court Err by Considering Partridge's Summary Judgment Evidence?

McIntosh objects that the district court erred by considering five pieces of summary judgment evidence: Dr. Anderton's report on his investigation of the allegations of professional misconduct against McIntosh, an internal e-mail reporting the poor condition of RSS residents' teeth, Partridge's letter to the state dental board reporting McIntosh's alleged professional misconduct, the state dental board's response to Partridge's letter, and Dr. Scalzitti's audit of the professional aspects of RSS's dental clinic. McIntosh argues that the e-mail, the letters to and from the state dental board, and Dr. Scalzitti's audit are not competent summary judgment evidence and were not properly authenticated. He also asserts that Dr. Anderton's report does not comply with Federal Rule of Civil Procedure 26(a)(2)(B).

---

[5] Since we hold that § 4323(b)(2) does not authorize federal jurisdiction over McIntosh's USERRA claim, we do not address whether § 4323(b)(2) unconstitutionally abrogates Texas's sovereign immunity in this case. We also do not address whether the district court erred by granting Partridge's motion for summary judgment with regard to McIntosh's USERRA claim.

At the summary judgment phase, affidavits must set out facts that would be admissible in evidence at trial. FED R. CIV. P. 56(e)(1). McIntosh asserts that four of five pieces of evidence contained inadmissible hearsay. This objection is without merit. The internal e-mail and Dr. Scalzitti's audit go to show why Partridge believed that McIntosh was inadequately performing his duties at RSS, which is relevant to the USERRA claim because it is evidence of Partridge's motivation for suspending McIntosh. Since each of the documents is admissible for a relevant purpose other than the truth of the statements contained within them, they are not inadmissible hearsay. FED. R. EVID. 801(c), 802. Partridge's statement contained in his letter to the dental board forms the basis for McIntosh's defamation claim; the reply from the state dental board confirms that it received the allegedly defamatory statements; and there is no indication that admission of either was harmful to McIntosh.

McIntosh's objection that Dr. Anderton's report was not submitted in accordance with Federal Rule of Civil Procedure 26(a)(2)(B), which governs expert reports, is similarly misplaced. Dr. Anderton's report investigated complaints about McIntosh's performance as head dentist of RSS, and it concluded that he had not been properly performing his duties. Barrera partially based his decision to terminate McIntosh on the evaluation contained in this report. Therefore, it is admissible as evidence that Barrera terminated McIntosh due to his poor performance, not his military service. For this purpose, it is not necessary for the report to meet the requirements of Rule 26(a)(2)(B).[6]

---

[6] McIntosh also argues that these documents were not properly authenticated as certified domestic records of regularly conducted activity. FED. R. EVID. 902(11). McIntosh is incorrect. Rule 902(11) sets out requirements for self-authenticating documents that may be introduced without extrinsic evidence of their authenticity. Partridge submitted affidavits from Dr. Anderton, Barrera, and Partridge properly authenticating each of the documents with his reply brief in support of summary judgment. This extrinsic evidence is sufficient to authenticate each document so there is no need for Partridge to prove that they are self authenticating under Rule 902(11).

Consequently, the district court did not abuse its discretion by considering these pieces of evidence. Furthermore, even if the consideration of the evidence was an error, McIntosh has not demonstrated how that error would have harmed him, so any error would not provide grounds for reversal. Richardson v. Oldham, 12 F.3d 1373, 1379 (5th Cir. 1994).

III. Did the District Court Err in Granting Summary Judgment on McIntosh's Due Process and Equal Protection Claims?

McIntosh argues that Partridge violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment by failing to provide him with a neutral administrative hearing as required by TDADS's Employee Misconduct Registry Handbook (the Handbook) before he was suspended.[7] McIntosh purportedly brings these causes of action against Partridge in both his individual and official capacities. To the extent McIntosh's claim is against Partridge in his individual capacity for damages under 42 U.S.C. § 1983, Partridge is entitled to the defense of qualified immunity. Bolton v. City of Dallas, 472 F.3d 261, 265 (5th Cir. 2006).[8] To the extent that McIntosh brings these claims against Partridge in his official capacity for monetary damages from the state treasury, they are barred by Texas's sovereign

---

[7] McIntosh claims that he was denied his right to a hearing at two points: before he was suspended with pay on November 1, 2005 and before he was terminated on September 8, 2006. A review of the record, however, indicates that Partridge was only responsible for the decision to suspend McIntosh with pay. There is no evidence in the record that Partridge made the decision to terminate McIntosh. That decision was made by Barrera (not a party here). Since McIntosh only asserts claims against Partridge, we only examine whether his decision to suspend McIntosh with pay before granting him a hearing violated the Due Process Clause.

[8] Once qualified immunity is invoked, it becomes the plaintiff's burden to rebut it. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). In order to rebut qualified immunity, the plaintiff must identify in the record a sufficient factual basis for a reasonable jury to conclude: "(1) that the defendant violated the plaintiff's constitutional rights and (2) that the violation was objectively unreasonable." Bolton, 472 F.3d at 265-66. The reasonableness inquiry asks whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 107 S.Ct. 3034, 3039 (1987).

immunity.[9] United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ., 665 F.2d 553, 560 (5th Cir. 1982).

Partridge contends that McIntosh is not covered by the Handbook, so he was not entitled to the administrative hearing that it requires. Alternatively, he argues that a violation of state procedures is insufficient to prove a violation of McIntosh's federal constitutional right to due process and that McIntosh received all the process the Constitution requires. The district court held that McIntosh had a property interest in his job[10] but that he was not denied due process because the state's interest in protecting the residents of RSS outweighed McIntosh's economic interest in his job because the state's actions were taken after the allegations were "thoroughly researched, cross-checked, and discussed with him."

McIntosh's assertion that his due process rights were violated because he was denied a hearing provided for by the Handbook is incorrect because "a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation." Stern v. Tarrant County Hosp. Dist., 778 F.2d 1052, 1059 (5th Cir. 1985) (en banc). "The fundamental issue in due process law is not whether state officials violated state law, but whether they provided the plaintiff with the [federal] constitutional minima." Gerhart v. Hayes, 201 F.3d 646, 650 (5th Cir. 2000). Therefore, the issue is whether McIntosh received sufficient process to meet the requirements of the federal Due Process Clause before his suspension with pay.

---

[9] McIntosh also seeks injunctive relief to return him to the position he would have been in but for the due process violation he claims. This request is premature as his grievance before the Health and Human Services Comission (not a party here) regarding his termination is currently held in abeyance, with his consent, pending the outcome of this litigation. Furthermore, McIntosh has presented no evidence that Partridge has the authority to provide him with the relief he seeks by injunction.

[10] Partridge does not dispute that McIntosh had a property interest in his employment, but he disputes that McIntosh's interest was extinguished when he was placed on paid leave.

To determine what process is constitutionally due, the Supreme Court has advised us to balance three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest . . . ." Mathews v. Eldridge, 96 S.Ct. 893, 903 (1976). In a case dealing with the suspension of a tenured employee, the Supreme Court held that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." FDIC v. Mallen, 108 S.Ct. 1780, 1787-88 (1988); see, e.g., Gilbert v. Homar, 117 S.Ct. 1807, 1813-14 (1997) (holding that a state's interest in preserving the integrity of its police force warranted suspending a recently indicted officer without pay before he was given a hearing); Barry v. Barchi, 99 S.Ct. 2642, 2649-50 (1979) (holding that a state's interest in preserving the integrity of the sport of horse racing was sufficiently important to justify a brief period of suspension prior to affording a suspended trainer a hearing).

In this case, McIntosh's interest was in maintaining his job, and Texas's interest was in protecting the dental health of RSS's mentally and physically disabled residents. McIntosh's interest in his job is important, but since he was suspended with pay, his hardship was not as strong as that suffered by the suspended officer in Gilbert. The state's interest here was at least as strong as the interest in preserving the integrity of the police force or the horse racing industry in Gilbert and Barry. Thus, the balance of the interests favors Texas.

The risk of erroneous deprivation was also significantly reduced because two dentists had already informed Partridge that McIntosh's actions had harmed the dental health of residents at RSS before he was suspended. Additionally, RSS hired Dr. Anderton to perform an independent investigation

into the allegations against McIntosh and allowed McIntosh to respond to the conclusions of the report before a decision was made to remove him from paid leave and terminate his employment. Furthermore, the hearing requested by McIntosh likely would not have significantly reduced the risk of erroneous deprivation any more than the procedures that were ultimately used.[11] So while this cross-checking may not have provided the same level of assurance as the grand jury indictments obtained in Gilbert and Mallen, it was a significant attempt to make sure that McIntosh's suspension was not "baseless or unwarranted."

Given the applicable standard and the precautions taken by Partridge and RSS, McIntosh's placement on paid leave without a hearing did not violate his due process rights. Therefore, his claim fails on the merits. But even assuming that McIntosh has presented sufficient evidence to support a finding that his due process rights were violated, he still has not rebutted Partridge's defense of qualified immunity because he has not shown that a reasonable person, in Partridge's position, would have understood that he was violating McIntosh's rights. Consequently, the district court properly granted summary judgment on McIntosh's due process claim against Partridge in his individual capacity. Any such Section 1983 damages claim against Partridge in his official capacity is barred by the Eleventh Amendment.[12]

---

[11] It is also worth noting that when Barrera offered McIntosh an opportunity to respond to Dr. Anderton's report, McIntosh attempted to have the hearing enjoined by the district court.

[12] In his brief, McIntosh occasionally mentions an "equal protection" claim in conjunction with his due process claim, but this claim is inadequately briefed and is hence waived. See Nichols v. Enterasys Networks, Inc., 495 F.3d 185, 190 (5th Cir. 2007). In fact, it is unclear on what basis McIntosh is even asserting he was denied equal protection. In any event, we note that the summary judgment evidence does not support any species of equal protection claim. As noted by the district court, Partridge has presented a great deal of evidence to support his assertion that McIntosh was suspended and terminated for poor job performance, and McIntosh has presented no evidence, other than the timing of his suspension, to contradict this.

IV.    Did the District Court Err in Dismissing McIntosh's Defamation Claim?

McIntosh next argues that the district court erred by dismissing his state law defamation claim because Partridge failed to prove absence of malice and to plead the affirmative defense of qualified privilege in his first responsive pleading.  To the extent that McIntosh's defamation claim was brought against Partridge in his individual capacity, Partridge asserted official immunity.[13]

The record is unclear as to how McIntosh's defamation claim was dismissed below.  The docket sheet and a Conference Memorandum dated August 4, 2006, both state that the district court dismissed McIntosh's defamation claim on McIntosh's own oral motion.  McIntosh did not challenge this characterization of the disposition of his claim at any point below and only disputed this issue on appeal once it was brought to his counsel's attention at oral argument.  McIntosh's failure to raise this issue below waives the issue on appeal, so it might ordinarily be a sufficient basis for affirming the district court's dismissal of his defamation claim.  Kinash v. Callahan, 129 F.3d 736, 739 n.10 (5th Cir. 1997) (per curiam).  The district court's April 30, 2007 "Opinion on Summary Judgment" , however, casts doubt upon that disposition of the claim by stating that "[t]he defamation claim was dismissed for failure to state a claim" because Partridge had a qualified privilege to make the statements.[14] Given this discrepancy, we will also consider whether the district court's decision can be affirmed on a basis other than the August 4, 2006 order.

---

[13] The Eleventh Amendment bars McIntosh from asserting his state law defamation claim against Partridge in his official capacity in federal court.  See Pennhurst State Sch. & Hosp. v. Halderman, 104 S.Ct. 900, 919 (1984) (holding that federal courts are barred by the Eleventh Amendment from hearing state law claims against state officials in their official capacity under supplemental jurisdiction).

[14] The opinion recites in this connection that "As McIntosh's employer, the agency had a qualified privilege to make the statements to the state's dental examiners and made them without malice." (emphasis added).

McIntosh correctly objects that Partridge failed to raise a qualified privilege defense in his first responsive pleading.[15]  In Texas, qualified privilege is an affirmative defense, Denton Publishing Co. v. Boyd, 460 S.W.2d 881, 884 (Tex. 1970), and Partridge failed to raise it in his answer as required by Rule 8(c). Moreover, McIntosh's complaint alleged that Partridge made the statements with malice, and if the plaintiff establishes malice the privilege is defeated.[16] Therefore, the district court erred by dismissing McIntosh's defamation claim for failure to state a claim under Rule 12(b)(6) based on qualified privilege.

Nevertheless, this court may affirm a district court's granting of a motion to dismiss on a basis not relied upon by the district court, and Partridge properly raised the defense of official immunity in his answer.  Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 486 (5th Cir. 2002).  In Texas, "[a] governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith."  Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000).  McIntosh does not dispute that Partridge was performing discretionary duties within the scope of his employment when he allegedly defamed McIntosh by reporting him to the state dental board, but he claims that these statements were false and that Partridge made them intentionally, willfully, and maliciously.

---

[15] In his "Motion to Dismiss and . . . Original Answer and Affirmative Defenses", Partridge asserted qualified immunity as a defense to the federal causes of action against him and he also asserted "official immunity" as to the Texas law claims against him, but he did not assert qualified privilege, which is a Texas common law defense to defamation.

[16] If the facts show a relationship giving rise to the qualified privilege, the plaintiff has the burden of proof to show that the statement was made with actual malice, thus defeating the privilege.  See, e.g., Duffy v. Leading Edge Products, 44 F.3d 308, 313-14 (5th Cir. 1995); Dun and Bradstreet, Inc. v. O'Neil, 456 S.W.2d 896, 898 (Tex. 1970).  See also, e.g., Wheeler v. Miller, 168 F.3d 241, 253 (5th Cir. 1999); Burch v. Coca-Cola, 119 F.3d 305, 323-24 (5th Cir. 1997).

Although the district court stated that it dismissed for failure to state a claim, it appears that it considered evidence outside the pleading because it concluded that Partridge acted without malice, contrary to McIntosh's allegations. Since the district court went beyond the scope of the pleadings, we will review its dismissal as a grant of summary judgment. Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489, 500 (5th Cir. 1982); Bossard v. Exxon Corp., 559 F.2d 1040, 1041 (5th Cir. 1977).

While "[w]e may affirm a summary judgment on any ground supported by the record," Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 258 (5th Cir. 2001), this principle does not of itself generally justify affirmance on a ground not raised below. F.D.I.C. v. Laguarta, 939 F.2d 1231, 1240 (5th Cir. 1991). Nevertheless, affirmance on such a ground is proper where the lack of notice to the nonmovant is harmless, such as where "'the [unraised] issues were implicit or included in those raised below or the evidence in support thereof, or . . . the record appears to be adequately developed in respect thereto.'" F.D.I.C. v. Lee, 130 F.3d 1139, 1142 (5th Cir. 1997) (quoting Laguarta at 1240 & n.20). See also, e.g., Love v. National Medical Enterprises, 230 F.3d 765, 771 (5th Cir. 2000); Nowlin v. Resolution Trust Corp., 33 F.3d 498, 504 (5th Cir. 1994); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 28 F.3d 1388, 1397-98 (5th Cir. 1994).

Under Texas law, "[a] plaintiff attempting to controvert the employee's summary-judgment evidence on good faith must show that no reasonable person in the employee's position could have thought that the facts justified the employee's actions." Cloud v. McKinney, 228 S.W.3d 326, 336 (Tex. App.—Austin 2007, no pet.). McIntosh has presented no evidence that shows that a reasonable employee in Partridge's position would not have reported to the state dental board Dr. Sadowski's and Dr. Scalzitti's allegations that McIntosh committed professional misconduct. Furthermore, while the district court did not

16

specifically address the defense of official immunity, such defense was properly pled, the court properly held that Partridge was entitled to qualified immunity as to McIntosh's federal claims, and "Texas law of official immunity is substantially the same as federal qualified immunity law." Wren v. Towe, 130 F.3d 1154, 1160 (5th Cir. 1997) (per curiam); see also City of Lancaster v. Chambers, 883 S.W.2d 650, 656 (Tex. 1994).

The evidence on official immunity, as well as that on qualified immunity (and on qualified privilege) appears to be fully developed. McIntosh has at no time suggested other evidence that he had and would have tendered below (or sought discovery respecting) had official immunity, and not simply qualified immunity, been raised as a ground for summary judgment (or had qualified privilege been properly raised). The record evidence shows as a matter of law that Partridge was entitled to official immunity with respect to his statements to the state dental board (and that those statements were made without malice) and there is no evidence to support a contrary finding. We affirm the dismissal of McIntosh's defamation claim.

V.    Motion to Supplement Record

Finally, McIntosh asserts that he should have been permitted to supplement the record with a copy of a May 2002 letter prepared by Partridge recommending McIntosh for a position as an officer in the U.S. Naval Reserve that was never tendered to the district court. Appellees opposed the motion and it was denied initially by the Clerk under 5th Cir. Local Rule 27.1.11 and again by the order of a single circuit judge on September 17, 2007.[17] As a general rule, this court "will not enlarge the record on appeal with evidence not before the district court." Trinity Indus., Inc. v. Martin, 963 F.2d 795, 799 (5th Cir. 1992). McIntosh has not provided sufficient justification to depart from this general

---

[17] McIntosh timely requested, and is entitled under 5th Cir. R. 27.2, to three-judge panel review, which we hereby provide.

rule. Therefore, his August 20, 2007 motion to supplement the record was properly denied.

CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED with respect to McIntosh's USERRA claim and that claim is hereby DISMISSED FOR WANT OF JURISDICTION; the district court's judgment in all other respects is AFFIRMED.