# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 20, 2019

Lyle W. Cayce
Clerk

No. 18-51086

ANTHONY CHAPPLE,

> Plaintiff - Appellant

v.

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,

> Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-410

Before OWEN, Chief Judge, and SMITH and DENNIS, Circuit Judges.

PER CURIAM:*

Anthony Chapple brought claims of discriminatory and retaliatory failure to rehire under Title VII, claiming he was well qualified for the positions for which he applied and his former employer's failure to rehire him was based on his race and sex, and, with respect to positions he subsequently applied for, his protected activity in filing a charge of discrimination with the Equal Employment Opportunity Commission. The district court granted

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-51086

summary judgment for the defendant, a Texas state agency. On appeal, Chapple contends the district court erred in granting summary judgment as to three of the positions for which he applied. For the reasons set forth herein, we AFFIRM.

I

Anthony Chapple, an African American male, worked most of his adult life for Texas state agencies, often within the Texas Health and Human Services Commission (HHSC). He worked as the Director of Licensing and Credentialing (DLC) for the Texas Department of Aging and Disability Services (DADS) for nearly eight years, from September 2004 until August 2012. Beginning in August 2012, he served as Director of Quality Mentoring Program in DADS. Chapple left the position when he retired in May 2013 and his replacement was hired shortly thereafter.

Chapple decided to come out of retirement when the individual hired to replace him as the DLC left the agency in 2014, at which point Chapple applied to resume that position. Mary Henderson, an associate commissioner at DADS, was responsible for hiring a replacement DLC. Henderson obtained the earlier job posting for the DLC position from human resources and made several alterations; relevant here, Henderson changed the screening criteria by (1) adding a preference for those with advanced degrees, and (2) removing the use of experience to substitute for an advanced degree. Henderson testified she did not know Chapple when overseeing hiring for the DLC position in 2014. Chapple was considered despite not having an advanced degree, but Henderson did not interview him; instead, she interviewed two other candidates and ultimately hired Cynthia Bourland. Henderson testified that Chapple was not selected for an interview because he did not have an advanced degree, because of a typo in his resume she believed reflected inattention to detail, and because he was not a current employee. Henderson also testified

2

that she decided to interview Bourland because she had a bachelor's degree in special education, a master's in education and education administration, and background and experience in state health services and licensing and certification.

When Chapple learned the DLC position had been filled, he complained of race and gender discrimination to John Weizenbaum, the commissioner of DADS, and Chris Traylor, the executive commissioner of HHSC. Chapple filed a charge of discrimination with the Equal Opportunity Employment Commission (EEOC) in September or October 2015, which the HHSC received in November.

Chapple applied for multiple additional positions from 2015 to 2017, but only two are relevant to this appeal.[1] In November 2015, Chapple applied for the Assistant Deputy Inspector General for Policy and External Relations (ADIGPER) position. Rebecca Komkov was among those responsible for deciding who would be hired for the ADIGPER position. Chapple was interviewed for the position, but Komkov later informed Chapple that hiring for that position had been put on hold. In October 2016, Chapple again applied for the DLC position that had again become vacant. Henderson was still responsible for filling this position and again decided not to hire Chapple.

Chapple filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2–2000e-3, alleging discrimination based on his race and sex, as well as retaliation for the seven subsequent positions for which he applied. Chapple later dropped his claims of retaliation as to four of the positions for

---

[1] Chapple applied for and was not hired for seven positions over this time period, but his amended EEOC charge did not specify which failures to hire he claimed were retaliation. Over the course of the litigation below, however, he amended his complaint several times to narrow the positions he claims he was not hired for as retaliation for his EEOC charge. On appeal, he raises only two positions that he was not hired for as retaliation, although the district court was faced with three.

which he applied.  The district court granted summary judgment in favor of HHSC (the successor to DADS for purposes of this litigation)[2] as to the remaining retaliation claims and his claim of discrimination.  Chapple appeals.

## II

We review the grant of summary judgment de novo, applying the same standard as the district court.  *Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.*, 612 F.3d 800, 804 (5th Cir. 2010).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  "Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual [dispute] for trial."  *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (cleaned up).

## III

Chapple appeals the district court's grant of summary judgment as to three positions: (1) the 2014 DLC position, (2) the 2015 ADIGPER position, and (3) the 2016 DLC position.  We first address his discrimination claim for HHSC's failure to hire him for the 2014 DLC position, then turn to his retaliation claims for the 2015 ADIGPER and 2016 DLC positions.

## A

Chapple first challenges HHSC's failure to hire him for the DLC position he previously held for almost eight years, arguing that Henderson, the

---

[2] DADS was abolished by statute in 2017, after which HHSC was substituted as the sole defendant.  We refer to the employer herein as HHSC.

No. 18-51086

decisionmaker, updated the job posting's preferred qualifications based on application of an updated set of preferred qualifications and the decision-maker's apparent favoritism toward a woman she mentored over other candidates. As to this position, the district court concluded that "Chapple has not produced sufficient evidence to show HHSC's proffered reasons for refusing to hire him were mere pretexts for discrimination." We agree.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin."[3]  42 U.S.C. § 2000e-2(a). At the summary judgment stage, we (and the district court) apply the burden-shifting framework set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). "First, the employee must prove a *prima facie* case of discrimination," which elements "vary slightly with the type of claim brought," but which, once shown, "creates a rebuttable presumption that the employer unlawfully discriminated against the employee." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). To rebut this presumption, "the employer must articulate a legitimate, nondiscriminatory reason for its decision," which requires the employer to produce, rather than prove, a nondiscriminatory reason. *Id.* Once the employer meets its burden of production, "[t]o avoid

---

[3] Although a plaintiff may also prevail on summary judgment under a theory that his or her protected characteristic "was a motivating factor for any employment practice, even though other factors also motivated the practice," 42 U.S.C. § 2000e-2(m), Chapple has not proceeded on that basis and his brief assumes the standard pretext analysis applies to his claims. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340–41 (5th Cir. 2005) (setting out the Fifth Circuit's analytical framework for pretext and mixed-motives cases on summary judgment). In applying a mixed-motives analysis, this court asks, at the final stage of a modified *McDonnell-Douglas* framework, whether "the defendant's [proffered reason for not hiring Chapple], while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id.* at 341 (quoting *Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004)). For the reasons set out in the analysis in this section, Chapple cannot meet this lesser standard either. There is simply no evidence that discriminatory animus was among the reasons HHSC failed to hire Chapple.

dismissal on the employer's motion for summary judgment, the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination." *Id.* (citations omitted). Thus, at the final stage, "an employee plaintiff, like any other civil plaintiff, must . . . demonstrate that there is a material issue of disputed fact as to discrimination, the ultimate question *vel non*." *Id.* at 315–16 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)). However, "[i]n some instances, proof of pretext alone will suffice." *Id.* at 316 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).

As the district court correctly notes, the prima facie case for Chapple's failure to rehire discrimination claim requires a showing that (1) Chapple belongs to a protected group; (2) he applied for and was qualified for the job; (3) he was not hired; and (4) the position was filled by someone outside the protected class. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir.1996)). Chapple easily meets these elements, as he worked in the exact position for which he applied for almost eight years, and the position was ultimately filled by a white woman while he is a black male. HHSC has likewise proffered facially sufficient legitimate, nondiscriminatory reasons for not hiring Chapple; namely, that he lacked an advanced degree, that his bachelor's degree was in an unrelated field, and his application contained a typo demonstrating a lack of attention to detail.

On the final, pretext stage, of the burden-shifting framework, the district court held that Chapple failed to rebut HHSC's legitimate, nondiscriminatory reasons with evidence of discrimination. Chapple argues that the summary judgment record supports his claim of pretext because it contains evidence that the DLC position had not changed since he held it, the changes do not relate to

DLC's job duties, and the changes were counter to state policy. He further contends that Henderson favored the ultimately successful candidate because of their participation in a mentorship program together, through which they developed a rapport. At most, Chapple's evidence supports an inference that Henderson favored another individual over him for reasons unrelated to discrimination.[4] This alternative nondiscriminatory reason is insufficient to raise an inference that HHSC's reasons for not hiring him were pretext for discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision."). There is simply no evidence of discriminatory animus on Henderson's part.

Chapple also cannot defeat summary judgment by showing he was clearly better qualified for the position because it is not at all clear that Chapple was better qualified for the DLC position. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 927–28 (5th Cir. 2010) (holding the "clearly better qualified" standard remains one way to infer pretext). Despite his years of service in that position, this court has held that an applicant's "better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). Chapple was unquestionably qualified, and he was appropriately considered a finalist for the position. However, Bourland was at least equally qualified. Bourland's qualifications included a bachelor's degree in a related

---

[4] John Weizenbaum's testimony that the DLC's job duties were basically the same as when Chapple held the position supports this view of the evidence because it rebuts the idea that an advanced degree is now required when previously it was not, and that experience was not an adequate substitute. The fact that the State Auditor recommends that "[e]xperience and education may be substituted for one another" provides some additional support for this view.

field, an advanced degree, and licensing and certification experience in another Texas agency. On such a record, it does not appear that Chapple can be characterized as "clearly better qualified."

For these reasons, the district court did not err in granting summary judgment rejecting Chapple's claim of race and sex discrimination in failing to hire him for the DLC position in 2014.

**B**

Chapple next challenges the district court's grant of summary judgment as to his claim that he was retaliated against when HHSC failed to hire him for the ADIGPER position in 2015 and the DLC position in 2016. As to the 2015 ADIGPER position, the district court held that Chapple could not establish a prima facie case of retaliation because he "has failed to produce sufficient evidence demonstrating the decision makers . . . knew of his EEOC complaint when they decided not to hire him." With respect to the 2016 DLC position, the district court concluded that "Chapple has not established a prima facie case of retaliation because he has not produced evidence demonstrating Henderson would have hired him as the Licensing Director in 2016 but for the EEOC complaint." With respect to both positions, the district court relied on the legal premise that "[i]n order to establish a causal connection" for a prima facie case, "Chapple must produce evidence showing that but for his 2015 EEOC complaint, HHSC would have hired him for each of the positions to which he applied." The district court erred in this respect.

Title VII prohibits discrimination against an employee or applicant for employment "because [the applicant] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). This court employs the *McDonnell-Douglas* burden-shifting framework for retaliation claims. *See Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). Accordingly, a plaintiff must

first establish a prima facie case, after which the defendant must articulate a legitimate, non-retaliatory reason for the adverse action, at which point the burden shifts back to the plaintiff to "adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation." *Id.* (cleaned up).

A retaliation plaintiff can make out a prima facie case of retaliation with three elements: "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017) (citing *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)). Contrary to the district court's conclusion, the "causal connection" prong of a retaliation plaintiff's prima facie case does not incorporate a but-for standard of causation. In *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), the Supreme Court announced that "retaliation claims must be proved according to traditional principles of but-for causation." 570 U.S. at 360. The Supreme Court in *Nassar* did not specify at what stage of the burden-shifting analysis the but-for causation should be incorporated. However, we have placed the requirement of showing but-for causation at the final, pretext stage, rather than the prima facie stage, in a Title VII retaliation case. *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (placing *Nassar*'s but-for causation inquiry at the pretext stage in a Title VII retaliation case); *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 241–42 (5th Cir. 2019). The district court thus legally erred in requiring a showing of but-for causation at the prima facie stage of Chapple's retaliation claims.

With respect to the 2015 ADIGPER position, the district court's conclusion that any evidence that a relevant decisionmaker knew of Chapple's EEOC charge when deciding not to hire him for the 2015 ADIGPER position

was merely speculative is also incorrect.  Chapple presented evidence that Stuart Bowen, the inspector general who ultimately decided not to hire Chapple for the position, may have contacted his references, who knew about the charge, and that EEOC complaints were regularly discussed at executive team meetings that Bowen attended.  Although Chapple's declaration is not a model of clarity on this point, he does state that "[w]henever an executive team member became aware that an employee was or had filed a complaint of racial discrimination, it was immediately escalated to the commissioner," as "[t]here was concern that this issue would get in the media and paint the agency in a negative light."  These statements, when read in the light most favorable to Chapple, could lead a reasonable jury to infer that Bowen knew of Chapple's EEOC charge.  *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 241 (5th Cir. 2015).

Despite these errors, we may affirm on any ground supported by the record and raised below.  *See McIntosh v. Partridge*, 540 F.3d 315, 326–27 (5th Cir. 2008).  We conclude that Chapple fails to raise a genuine dispute of material fact that but for his EEOC charge, he would have been hired for the 2015 ADIGPER position.  HHSC asserted in the district court, and contends on appeal, that the position was ultimately cancelled and that this cancellation constituted a legitimate, nonretaliatory reason that Chapple was not hired. Chapple's responsive evidence—that Bowen decided to withdraw the position after Komkov, one of those responsible for hiring for the ADIGPER position, told him that Chapple was a top candidate for the position—is insufficient to show pretext.  After all, Komkov testified that she had been skeptical from the start of filling the ADIGPER position because "she was recommending that [they] have two managers," rather than the ADIGPER position.  This evidence is insufficient for a reasonable jury to conclude that the reason Komkov gave for cancelling the position—that the position was "on hold pending

confirmation of organizational structure and needs"—was pretext for retaliation. At best, Chapple's evidence implicates suspicious timing, but "[t]iming standing alone is not sufficient absent other evidence of pretext." *Burton*, 798 F.3d at 240 (internal quotations omitted).

As for the 2016 DLC position, although the district court was wrong to hold that Chapple's failure to show but-for causation resulted in a failure of his prima facie case, we find that this failure dooms his claim at the pretext stage. HHSC contended below, and maintains on appeal, that Chapple was less qualified than the ultimately successful candidate for the 2016 DLC position. As the district court noted, each of the three candidates interviewed for the position had an advanced degree (which Chapple lacked), and the candidate that was eventually hired had a Ph.D. Chapple argues retaliation can be inferred because he was in the top ten candidates who applied for the position in 2014 but was not ranked in the top ten among applicants for the 2016 DLC position. However, Chapple's ranking vis-à-vis other candidates does not change the qualifications of those selected for interviews or otherwise rebut the veracity of the reason for selecting them over Chapple. Moreover, as the district court pointed out, there were far more applicants in 2016 for the DLC position than in 2014, which accounts for his dropping out of the top ten. In short, Chapple cannot raise a genuine dispute of material fact that, at the ultimate pretext stage, his qualifications were not the true reason that HHSC hired someone else, or that he would have been hired but for his EEOC charge. *See Rios*, 252 F.3d at 380.

**\*\*\***

For these reasons, the judgment of the district court is AFFIRMED.

11