**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 3, 2011

No. 10-31241

Lyle W. Cayce
Clerk

UNION PACIFIC RAILROAD COMPANY,

Plaintiff-Appellant

v.

LOUISIANA PUBLIC SERVICE COMMISSION; ERIC SKRMETTA, In his capacity as Commissioner; JAMES M. FIELD, In his capacity as Commissioner; LAMBERT C. BOISSIERE, III, In his capacity as Commissioner; CLYDE C. HOLLOWAY, In his capacity as Commissioner; FOSTER L. CAMPBELL, In his capacity as Commissioner; STATE OF LOUISIANA,

Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Louisiana

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:

In this case, Plaintiff-Appellant Union Pacific Railroad Company ("Union Pacific") appeals the district court's grant of summary judgment in favor of Defendants-Appellees Louisiana Public Service Commission, Eric Skrmetta, James M. Field, Lambert C. Boissiere, III, Clyde C. Holloway, Foster L. Campbell, and the State of Louisiana (collectively "the State of Louisiana" or "the State"). We conclude that the State of Louisiana is entitled to immunity and REMAND to the district court with instructions to dismiss.

No. 10-31241

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2008, the Louisiana Legislature passed Act No. 530, codified at Louisiana Revised Statutes Section 48:394, which requires that all railroad companies obtain permission from the Louisiana Public Service Commission ("LPSC") before closing or removing private railroad crossings. La. Rev. Stat. § 48:394. During the pendency of this litigation, in 2010, the Louisiana Legislature adopted Act 858, amending Section 48:394 in light of our decision in *Franks Investment Co. v. Union Pacific Railroad Co.,* 593 F.3d 404 (5th Cir. 2010) (en banc).

As amended, Section 48:394 sets forth a procedure that railroads must follow when closing private railway crossings. Under this Section, if a railroad wants to close a private crossing, it must provide a written request to the LPSC and the owner(s) of the crossing. La. Rev. Stat. § 48:394(A)(1). In the request, the railroad company must "state the manner in which [the] private railroad crossing unreasonably burdens or substantially interferes with rail transportation." La. Rev. Stat. § 48:394(A). Upon publication of this written request, the LPSC must then hold a public hearing, after which it determines whether the crossing may be closed. La. Rev. Stat. § 48:394(A)–(C).[1]

---

[1] The statute, in its current form, provides:

> A. (1) Any railroad company operating in this state which desires to close or remove a private crossing shall, no less than one hundred eighty days prior to the proposed closing or removal, provide a written request by registered or certified mail to the Louisiana Public Service Commission and to the owner or owners of record of the private crossing traversed by the rail line. The written request shall state the manner in which such private railroad crossing unreasonably burdens or substantially interferes with rail transportation.
>
> (2) The Louisiana Public Service Commission shall publish the written request from the railroad company in the commission's official bulletin for no less than twenty-five days.

2

No. 10-31241

On June 25, 2009, Plaintiff-Appellant Union Pacific filed the instant action against the LPSC and its commissioners in their official capacity, seeking a declaration that Section 48:394 is preempted by federal law, and both preliminary and permanent injunctions against the enforcement of that Section. On July 7, 2010, the district court denied a motion for summary judgment filed by Union Pacific, ruling that Section 48:394 was not preempted by federal law. Then, on July 30, 2010, after Section 48:394 was amended by the Louisiana Legislature, Union Pacific filed a second amended complaint, adding the State of Louisiana as a defendant and asserting additional claims under both the

---

> B. No private crossing shall be closed or removed by any railroad company until after a public hearing by the Louisiana Public Service Commission at which parties in interest have had an opportunity to be heard. Notice of the time and place of the hearing shall be published in the official journal of the parish and the commission's official bulletin and at least fifteen days shall elapse between the publication and the date of the hearing. In addition to notice by publication, and at least ten days prior to the hearing, a good faith attempt to notify the owner or owners of record of the property where the private crossing is located shall be made by the commission by sending an official notice by registered or certified mail of the time and place of the hearing to the address or addresses indicated in the mortgage and conveyance records of the parish. The public hearing shall be held not less than sixty days after receipt of request of the railroad company as provided in Subsection A of this Section.
>
> C. If, after such public hearing, the commission determines that the private railroad crossing unreasonably burdens or substantially interferes with rail transportation, the commission shall publish in the official journal of the parish where such crossing is located and in the commission's official bulletin a notice stating the manner in which such closure or removal shall be made and the date of such.
>
> D. The provisions of this Section shall not apply when a private landowner or landowners and a railroad company enter into a consensual or negotiated written agreement or agreements to close a private railroad crossing.

La. Rev. Stat. § 48:394.

3

No. 10-31241

federal and Louisiana constitutions.  The State did not assert an Eleventh Amendment immunity defense in the district court.  On November 18, 2010, the district court granted a motion for summary judgment filed by the State, dismissing all of Union Pacific's claims.  In reaching this judgment, the district court ruled that Section 48:394 is constitutional under both Louisiana and federal law, and it also ruled that the Section is not preempted by federal law.

On December 17, 2010, Union Pacific filed a notice of appeal, appealing only the district court's ruling that Section 48:394 does not authorize an unconstitutional taking in violation of Article I, Section 4(B)(1) of the Louisiana Constitution.  Specifically, Union Pacific argues that Section 48:394 takes property without a public purpose because it interferes with the fundamental property right of exclusion.  In response, the State of Louisiana, for the first time on appeal, asserts that it is entitled to Eleventh Amendment  immunity and argues that this action should be dismissed for lack of subject matter jurisdiction.[2]

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo.  *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010); Fed. R. Civ. P. 56(a).  We also review issues of law, such as whether a state is entitled to sovereign immunity, de novo.  *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011).

## III. ANALYSIS

In resolving this appeal, the Court must first determine whether the State of Louisiana is entitled to immunity from suit, even though it litigated this action on the merits before the district court and did not raise Eleventh Amendment immunity until appeal.  *United States v. Tex. Tech Univ.*, 171 F.3d

---

[2] In their briefing, Defendants-Appellees also argue that we should abstain from exercising jurisdiction under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943),  and, on the merits, that we should rule that the Act is constitutional under Louisiana law.

No. 10-31241

279, 285–86 (5th Cir. 1999) (stating that Eleventh Amendment immunity must be resolved prior to reaching merits). We conclude that the State did not unequivocally waive its immunity and that this appeal must, therefore, be dismissed.[3]

"The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002) (citation omitted); *see also Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240–41 (5th Cir. 2005).[4] The state sovereign immunity doctrine is unique because it acts as an affirmative defense, while also containing traits more akin to a limitation on subject-matter jurisdiction. *See, e.g.*, *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237–38 (2d Cir. 2006) (describing the underlying tension in Supreme Court jurisprudence in this area). For example, Eleventh Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state. *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002); *Skelton v. Camp*, 234 F.3d 292, 295–96 (5th Cir. 2000). Unlike subject matter jurisdiction, however, this immunity may be waived by the state, like an affirmative defense. *Lapides*, 535 U.S. at 618; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) ("The [Eleventh] Amendment, in other words, enacts a sovereign immunity from suit, rather than

---

[3] State immunity "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Additionally, as is well established, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, here, there is no dispute that all of the Defendants-Appellees are functionally the State of Louisiana and are entitled to Eleventh Amendment immunity, if it has not already been waived.

[4] As we explained in *Benzing*, the terms "state sovereign immunity" and "Eleventh Amendment immunity" are often used interchangeably to mean the same thing. 410 F.3d at 240, 251–52; *see also Watson v. Texas*, 261 F.3d 436, 440 n.4 (5th Cir. 2001).

No. 10-31241

a nonwaivable limit on [federal] subject-matter jurisdiction. The immunity is one the States enjoy save where there has been a surrender of this immunity . . . ." (internal quotation marks and citation omitted)).

As noted, a state's immunity from suit is not absolute, and the Supreme Court has recognized a handful of circumstances in which an individual may sue a state in federal court. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, Eleventh Amendment immunity may be abrogated by Congress as a means of enforcing the Fourteenth Amendment. *Id.* Second, a state may waive its immunity by voluntarily consenting to suit. *Id.*; *Benzing*, 410 F.3d at 241.[5] In this second situation, waiver is present if the state voluntarily invokes federal-court jurisdiction or if it makes a "clear declaration" that it intends to submit to federal jurisdiction. *Coll. Sav. Bank*, 527 U.S. at 675–76.

At issue on this appeal is the second exception—specifically, whether the State of Louisiana waived its Eleventh Amendment immunity by not raising it as a defense in the district court. In *Benzing*, we analyzed whether the removal by a state of federal claims to federal court constitutes a voluntary waiver of sovereign immunity. 410 F.3d at 242–50. Relying upon the Supreme Court's decision in *Lapides*, we noted that the central inquiry in determining a waiver of Eleventh Amendment immunity was whether the state's litigation conduct constituted a voluntary invocation of federal jurisdiction. In that case we found that removal by the state was a voluntary invocation of federal jurisdiction and was thus a waiver of immunity. In reaching that decision, we also noted that this "voluntary invocation principle" should apply "generally in all cases," and

---

[5] The Supreme Court has also recognized that the Eleventh Amendment does not bar a private party from suing a state officer in his official capacity for injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159–60 (1908); *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

No. 10-31241

not just in cases where a state removes to federal court.  *Id.* at 249; *see also Lapides*, 535 U.S. at 619–24; *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Intern. Software, Inc.*, 653 F.3d 448, 461–62 (7th Cir. 2011) (citing *Benzing* and stating that the voluntary invocation principle should apply in all cases of waiver through litigation conduct).  Thus, here, the relevant inquiry is whether the State of Louisiana voluntarily invoked or submitted to federal jurisdiction through its conduct in the district court.

Under the facts of this case—where the State of Louisiana was involuntarily haled into federal court as a defendant—we conclude that there was never a voluntary invocation of or unequivocal submission to federal jurisdiction.  *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985) (stating that an "unequivocal indication" is generally required before a waiver of immunity will be found).  While the State may have defended on the merits below, it never chose to litigate this suit in a federal forum.  *See Phx. Intern. Software*, 653 F.3d at 462 (stating that the crucial consideration is the "voluntariness of the state's choice of forum"); *Union Elec. Co. v. Mo. Dep't of Conservation*, 366 F.3d 655, 660 (8th Cir. 2004) (holding that state did not waive immunity, even though it defended on the merits in federal court).  The State's conduct in the district court in the present case is insufficient to constitute an unequivocal or clear declaration of waiver.

Further, the circumstances surrounding the State of Louisiana's decision not to assert Eleventh Amendment immunity until appeal assuage any fears of gamesmanship.  *Lapides*, 535 U.S. at 621 (worrying that states will use immunity to "achieve unfair tactical advantages"); *Benzing*, 410 F.3d at 248–50 (discussing fear that states will selectively invoke immunity to gain a tactical advantage).  The State was successful in the district court and it is not attempting to use immunity to void an unfavorable judgment.  Further, immunity was not raised by the State in the district court because the primary

challenge to Section 48:394 below was on federal preemption grounds, a claim over which the district court had jurisdiction. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (stating that federal courts have jurisdiction over equitable suits against state arguing federal preemption).[6] Thus, because the State of Louisiana has not waived its Eleventh Amendment immunity, it may still properly assert this defense on appeal. *See Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) (stating that Eleventh Amendment immunity may be raised for the first time on appeal); *Edelman v. Jordan*, 415 U.S. 651, 677–78 (1974) (same).

This outcome is consistent with our earlier case law, in which we found that participation by the state in an action does not necessarily preclude a later assertion of Eleventh Amendment immunity. *See, e.g. Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 F. App'x 391, 393 (5th Cir. 2007) (per curiam) (holding that state did not waive immunity by participating in EEOC process and stating that failure to raise immunity defense is not a "clear declaration" of waiver); *Neinast v. Texas*, 217 F.3d 275, 279–80 (5th Cir. 2000) (holding that litigating a motion to dismiss for failure to state a claim is not a voluntary waiver of immunity); *Skelton*, 234 F.3d at 295–96 (stating that issues of immunity under the Eleventh Amendment need not be raised in the trial court); *Evans v. City of Bishop*, 238 F.3d 586, 589 n.6 (5th Cir. 2000) (same). Additionally, although the law in other circuits has been less than clear, our conclusion that immunity has not been waived here is supported by that case

---

[6] Justice Kennedy's concurrence in *Wisconsin Department of Corrections v. Schacht* argues, in part, that Eleventh Amendment immunity should be treated more like personal jurisdiction. 524 U.S. 381, 394–95 (1998) (Kennedy, J., concurring). Justice Kennedy was particularly concerned with states gaining an unfair advantage by raising Eleventh Amendment immunity for the first time on appeal. *Id.* at 394. Although the Supreme Court favorably cited Justice Kennedy's *Schacht* concurrence in *Lapides*, *Lapides*' narrow holding did not fundamentally alter Eleventh Amendment immunity. 535 U.S. at 623–24. In particular, *Lapides* does not purport to alter the longstanding rule that sovereign immunity may be raised on appeal so long as it has not already been waived.

law, which generally has held that Eleventh Amendment immunity may be raised for the first time on appeal. *See, e.g.*, *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941–42 (10th Cir. 2008) (stating that Eleventh Amendment immunity "may be raised at any time, even on appeal for the first time"); *Lombardo v. Penn., Dep't of Pub. Welfare*, 540 F.3d 190, 197 n.6 (3d Cir. 2008) (same); *Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005) (same); *State Contracting & Eng'g Corp. v. Florida*, 258 F.3d 1329, 1336 (Fed. Cir. 2001) (noting that state may raise immunity after defending on merits); *Torres v. P.R. Tourism Co.*, 175 F.3d 1, 4 (1st Cir. 1999) (stating that immunity may be raised on appeal); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 365 (3d Cir. 1997) (same), *aff'd* 527 U.S. 666 (1999)); *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 226–27 (4th Cir. 1997) (same); *but see Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1021–22 (9th Cir. 2010) (stating that defending on merits evidences an intent to waive immunity); *Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (same).

Thus, given the involuntary nature of the State's participation in this suit, we conclude that Louisiana has not waived its Eleventh Amendment immunity. Additionally, because the parties agree that if the State is entitled to immunity the case should be dismissed, we dismiss this appeal and remand to the district court with instructions to dismiss this action.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the State of Louisiana is entitled to immunity and REMAND to the district court with instructions to dismiss.