# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 16, 2012

No. 12-60010

Lyle W. Cayce
Clerk

JOHN C. KERMODE, PH.D.,

Plaintiff-Appellant

v.

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER; JERRY M. FARLEY, SR., PH.D.; MISSISSIPPI INSTITUTIONS OF HIGHER LEARNING; DANIEL W. JONES; HELEN R. TURNER; JAMES E. DORN,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
3:09-CV-584

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellee John Kermode was a tenured professor at the University of Mississippi Medical Center who was discharged for his alleged harassment of his former graduate student mentee. Kermode availed himself of the academic appeals process and then filed suit in federal court against the Medical Center, the Mississippi Institutions of Higher Learning, and various faculty members

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 12-60010

for federal due process violations under 42 U.S.C. § 1983 and for supplemental state law claims sounding in tort and contract. The parties dispute whether the state defendants waived sovereign immunity by defending the suit on the merits; whether Kermode forfeited his waiver argument by failing to raise it until after the district court granted summary judgment to the defendants; whether the district court erred in adjudicating the supplemental claims despite having dismissed most of the federal claims on immunity grounds; and whether the district court abused its discretion in denying Kermode's discovery motion regarding the alleged spoilation of electronic evidence. We affirm.

## I.

John Kermode was a tenured professor of Pharmacology and Toxicology at the University of Mississippi Medical Center who was terminated due to his alleged harassment of Ms. Sang Won Park, a graduate student in his laboratory. Problems in the mentor-mentee relationship between Kermode and Park emerged in late 2007 when Kermode invited Park to attend an academic conference with him. Kermode's wife became jealous and confronted Park. Kermode withdrew Park's invitation to attend the conference, prompting Park's decision to leave Kermode's lab and sever their professional relationship. Kermode made numerous attempts to change Park's mind, both in person and via email; he begged her to return to his laboratory and offered various incentives for her to do so in the form of authorship credits and other professional opportunities. Park repeatedly requested that he cease communicating with her about the matter, but Kermode persisted, and Park asked other faculty members to intervene.

The chair of the department, Dr. Jerry Farley, warned Kermode that his actions could be characterized as harassment and instructed him several times to honor Park's wishes that he cease communicating with her. Kermode

No. 12-60010

continued to communicate via email with Park, and he sent her a message implying that he would rescind her authorship credit on one of his laboratory's manuscripts unless she began treating him more nicely. Farley attested that he felt the quid pro quo tenor of this email was inappropriate and unprofessional. This message, among other factors, led Farley to bring the matter to the attention of the University. The University investigated the allegations of harassment and ultimately decided to terminate Kermode with pay pending the outcome of a hearing before the Academic Freedom and Faculty Responsibility Committee. After the hearing, in which Kermode was represented by counsel and allowed to present evidence on his behalf, the Committee found that Kermode had harassed Park but recommended against termination. Nevertheless, the final decision regarding employment action was vested in the Vice-Chancellor, Dr. Daniel Jones, who upheld the decision to terminate Kermode. Kermode appealed the decision to the Mississippi Institutions of Higher Learning (MIHL), the state board that oversees Mississippi's public universities, which also affirmed the termination.

Kermode filed suit in the United States District Court for the Southern District of Mississippi against the Medical Center, the MIHL, and Farley in his individual and official capacities. Kermode amended his complaint to add official-capacity claims against Jones and two other faculty members involved with the termination proceedings, Drs. Helen Turner and James Dorn.[1] Kermode asserted federal causes of action under § 1983 for alleged due process violations and Mississippi claims for breach of contract, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, invasion

---

[1] At times, we refer to the Medical Center and the official-capacity defendants collectively as the "state" or the "state defendants." Only Dr. Farley was sued in both his individual and official capacities, and we refer to the individual-capacity claims against him separately.

3

of privacy, tortious interference with a contract, defamation, and civil conspiracy. He argues that Park's accusations of harassment were purely vindictive, that the proceedings were unfounded, and that the Medical Center denied him a fair hearing.

The defendants filed an answer to the complaint in which they asserted, among other defenses, the affirmative defense of Eleventh Amendment or sovereign immunity. The district court set a discovery and mediation schedule, with trial to be held six months later in June of 2011. The parties exchanged discovery on the timeline set by the district court. Meanwhile, the MIHL filed a motion to dismiss based on Eleventh Amendment immunity, which the district court granted. The Medical Center did not file a motion to dismiss on sovereign immunity grounds. Farley filed a motion to dismiss based on qualified immunity and state law immunity, which the district court granted in part as to the official-capacity claims against him. Kermode does not challenge either ruling on appeal. The district court denied Farley's motion to dismiss as to the supplemental state law claims against him in his individual capacity for invasion of privacy, intentional interference with a contract, defamation, and civil conspiracy. After Kermode amended his complaint to add the other faculty member defendants, the defendants filed an amended answer asserting materially the same defenses as they previously asserted, including sovereign immunity.

At the end of the discovery period, the remaining defendants (the Medical Center and the faculty member defendants) filed a motion for summary judgment, again asserting, inter alia, sovereign immunity. The district court granted the motion as to Kermode's claims against the Medical Center and against the faculty members for money-damages claims asserted against them

4

No. 12-60010

in their official capacities on sovereign immunity grounds.[2] The district court also granted summary judgment as to the remaining individual-capacity claims against Farley, finding on the merits that Kermode failed to establish a genuine issue of material fact as to his invasion of privacy, intentional interference with a contract, defamation, and civil conspiracy claims. The district court denied summary judgment as to Kermode's due process claims in which he sought prospective injunctive relief against the faculty members in their official capacities under *Ex parte Young*, 209 U.S. 123 (1908) (his "*Ex parte Young* claims").

Kermode then filed a motion to alter or amend the judgment under Rule 59(e) in which he argued for the first time that the state defendants waived their immunity by evidencing an intent to defend the suit on the merits because, Kermode claimed, they failed to assert sovereign immunity in their answer or in a Rule 12 motion and because they engaged in discovery. The district court denied the motion, finding that Kermode forfeited the argument by failing to raise it in his opposition to summary judgment. Kermode then filed a motion under Federal Rule of Civil Procedure 54(b) to certify the partial summary judgment for appeal. The district court granted the Rule 54(b) motion and stayed proceedings on the only remaining claims, those under *Ex parte Young*, until resolution of the present appeal.

## II.

---

[2] As explained more fully below, the faculty members are state officers who, when sued in their official capacities, are entitled to raise the same sovereign immunity defense as the Medical Center. It "is well established [that] 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office'" and that therefore the official-capacity defendants are entitled to invoke sovereign immunity. *Union Pac. R.R. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

5

No. 12-60010

The district court had federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over Kermode's Mississippi tort and contract claims under 28 U.S.C. § 1367. This Court has jurisdiction over the final judgments of district courts. 28 U.S.C. § 1291. State sovereign immunity represents a jurisdictional limit on the federal courts unless a state has waived or otherwise surrendered its immunity. *E.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997).

The district court entered its order certifying its partial grant of summary judgment as the final judgment against Kermode on December 2, 2011. *See* FED. R. CIV. P. 54(b). Kermode filed his notice of appeal on December 28, 2011, fewer than 30 days after the district court's Rule 54(b) order, making his appeal timely. *See* FED. R. APP. P. 4(a)(1)(A).

## III.

We review de novo whether a state is entitled to sovereign immunity. *E.g.*, *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011).[3] "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637 (2011). "[S]tate sovereign immunity 'has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not

---

[3] Defendants urge two kinds of immunities, "sovereign immunity" and "Eleventh Amendment immunity." Because there is no substantive difference between them, however, we use the term, "sovereign immunity" in our analysis. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240-41 (5th Cir. 2005) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)); *see also, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1637-38 (2011) (internal citations omitted) ("The language of the Eleventh Amendment only eliminates the basis for our judgment in the famous case of *Chisholm v. Georgia*, 2 U.S. 419 (1793), which involved a suit against a State by a noncitizen of the State. Since *Hans v. Louisiana*, 134 U.S. 1 (1890), however, we have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant.").

to be amenable to the suit of an individual without its consent.'" *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999) and quoting *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank*, 527 U.S. 627, 634 (1999)).   Despite the principle of sovereign immunity, a state may still be subject to suit in federal court if it "consents to suit or [if] Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citations omitted).

## A.

Kermode does not dispute that these defendants are entitled to invoke sovereign immunity, but contends they waived or surrendered their immunity by failing to timely invoke it.  We agree that the Medical Center and the official-capacity faculty defendants are state entities entitled to invoke sovereign immunity against suits by individuals in federal court.  Sovereign immunity extends to agencies of the state government and "alter egos" or "arms of the state." *See, e.g.*, *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 360 (2006); *Alden v. Maine*, 527 U.S. 706, 756 (1999); *Union Pac. R.R. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011); *United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 556-67 (5th Cir. Unit A 1982); *Perez*, 307 F.3d at 326.  State colleges and universities may be considered "arms of the state," but they are not automatically entitled to sovereign immunity. *Compare, e.g.*, *Hander v. San Jacinto Junior Coll.*, 519 F.2d 273, 278 (5th Cir. 1975) (declining to grant sovereign immunity because the junior college districts in the city were "primarily local institutions, created by local authority and supported largely by local revenues"), *with Clay v. Tex. Women's Univ.*, 728 F.2d 714, 715 (5th Cir. 1984) (accepting on appeal the district court's undisputed finding that Texas Women's University is an arm of the state entitled to

immunity).    In addressing whether an institution is an arm of the state and thus entitled to sovereign immunity, "we examine the powers, characteristics[,] and relationships created by state law in order to determine whether the suit is in reality one against the state." *United Carolina Bank*, 665 F.2d at 557.

This Court has held that the University of Mississippi is an arm of the state entitled to raise the defense of sovereign immunity because, under the University's charter, the State is "inextricably involved in all facets of the Board [of Trustees'] operation of the University." *Jagnandan v. Giles*, 538 F.2d 1166, 1174-75 (5th Cir. 1976).    In an unpublished decision, a panel of this Court concluded that the University of Mississippi Medical Center is an arm of the University of Mississippi and as such is entitled to raise the state's sovereign immunity as well.  *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009); *see also Sullivan v. Univ. of Miss. Med. Ctr.*, 617 F. Supp. 554, 557 (S.D. Miss. 1985) (same).    We agree and conclude that as an arm of the University of Mississippi, the University of Mississippi Medical Center is entitled to assert the defense of sovereign immunity.

In addition, suits against state officers in their official capacities, rather than their personal capacities, are treated as suits against the state entity itself. It "is well established [that] 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office'" and that therefore such officials are entitled to invoke the state's sovereign immunity.  *Union Pac. R.R.*, 662 F.3d at 340 n.3 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also, e.g.*, *Alden*, 527 U.S. at 756 ("Some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the State as a party if the suits are, in fact, against the State."); *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'").    This extends to

faculty administrators of a state university that qualifies as an arm of the state. *See United Carolina Bank*, 665 F.2d at 555-57. Thus, sovereign immunity extends to both the Medical Center itself and to its faculty administrators sued in their official capacities.

### B.

Kermode argues that the state defendants waived their immunity by evidencing an intent to defend the suit on the merits. Even if sovereign immunity applies, the state may still waive immunity and consent to suit in federal court. *See, e.g.*, *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985), *superseded on other grounds by* Rehabilitation Act Amendments of 1986, § 1003, Pub. L. No. 99-506, 42 U.S.C. § 2000d-7.[4] "Although [the court is] empowered to consider an Eleventh Amendment [sovereign immunity] claim raised for the first time on appeal, [the court] must consider whether [a state's] failure to raise the issue below effectively waived its claim to immunity." *Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000) (citing *Calderon*, 523 U.S. at 745 n.2); *see also, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974) (holding a court may consider sovereign immunity issue raised for the first time on appeal). "A state's waiver of immunity must be unequivocal." *Neinast*, 217 F.3d at 279 (citing *Atascadero*, 473 U.S. at 241). A state "may evidence that waiver, however, through action other than an express renunciation[,]" including by demonstrating "an intent to defend the suit against it on the merits." *Id.* (citing *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 763 (9th Cir. 1999)). "But the decision to waive that immunity must be voluntary on the part of the sovereign.

---

[4] In addition, Eleventh Amendment immunity may be abrogated for certain civil rights litigation, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 56-59 (1996), but these do not include § 1983 suits, *see Quern v. Jordan*, 440 U.S. 332, 345 (1979). Abrogation principles are therefore not applicable in this case.

Generally, the [c]ourt will find a waiver either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction." *Benzing*, 410 F.3d at 241 (holding a state voluntarily invokes federal jurisdiction by removing the case to federal court).

We have indicated that a state's delay in raising the defense of sovereign immunity at the trial level may constitute waiver if it evidences an intent to defend the case on the merits. *See, e.g.*, *Neinast,* 217 F.3d at 279 (noting that a "state cannot simultaneously proceed past the motion and answer stage to the merits and hold back an immunity defense," including the defense of sovereign immunity) (citing *Hill*, 179 F.3d at 758); *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 720 n.4 (5th Cir. 2004) (noting that "[b]y seeking summary judgment on the merits before raising sovereign immunity, the [state] did exactly" what the court warned against in *Neinast*). Thus, a state defendant may waive its immunity "by conduct that is incompatible with an intent to preserve that immunity." *Hill*, 179 F.3d at 758. This rule was established in recognition that without it, a state entity might have an unfair advantage if it could wait until the eve of trial to assert its immunity. *See id.* at 757; *cf. Union Pac.*, 662 F.3d at 341-42 (holding that the state entity defendant did not waive its sovereign immunity notwithstanding the fact that it was raised for the first time on appeal because there was no evidence of "gamesmanship" as it was not "attempting to use immunity to void an unfavorable judgment").

However, we have never held that a state has waived its sovereign immunity when it asserted sovereign immunity as an affirmative defense in its answer and again in its motion for summary judgment. A defendant's answer is virtually the earliest time in which it may raise such a defense. Although the state defendants did not raise their sovereign immunity in a Rule 12 motion, they nevertheless put Kermode on notice from the very beginning that they

intended to move to dismiss on those grounds. In addition, they vigorously reasserted the defense in their motion for summary judgment. Under the circumstances, we cannot conclude that the state defendants engaged in "gamesmanship" or otherwise evidenced an intent to waive their sovereign immunity in this case. The district court was therefore correct to grant the state defendants' motion for summary judgment based on sovereign immunity.

In his briefing and during oral argument, Kermode insisted that the defendants did not assert their sovereign immunity in their answers but instead waited until their motion for summary judgment. If this were true then it would be a different situation, and one not yet addressed by our precedent. *Cf. Int'l Truck & Engine Corp.*, 372 F.3d at 720 n.4 (finding waiver where defendant waited until after summary judgment to raise sovereign immunity). However, Kermode's assertion is plainly contradicted by the record. The state defendants asserted the affirmative defense of sovereign immunity in their answers and amended answers before asserting it again in their motion for summary judgment. We affirm the district court's dismissal of Kermode's complaint against the state defendants on sovereign immunity grounds.[5]

## IV.

We next turn to Kermode's alternative argument that the district court, having dismissed his claims against the state defendants on sovereign immunity grounds, erred in exercising supplemental jurisdiction to adjudicate his individual-capacity claims against Dr. Farley. Federal courts may exercise supplemental jurisdiction over state law claims when there is a federal claim

---

[5] Because we resolve the question of sovereign immunity waiver on the merits, we need not reach the defendants' alternative contention that Kermode forfeited his argument that the defendants waived their immunity as a result of his failure to raise the issue until his Rule 59(e) motion to alter or amend the judgment.

properly before the court and a state claim that arises from a "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)*; see* 28 U.S.C. § 1367(a); *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158 (5th Cir. 2011). We review the legal basis for supplemental jurisdiction de novo, *e.g.*, *Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir. 1994), and we review a district court's refusal to relinquish jurisdiction over supplemental state claims for abuse of discretion, *e.g.*, *Enochs*, 641 F.3d at 158.

### A.

Kermode argues that the Supreme Court's holding in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), requires that the supplemental state law claims be dismissed along with the federal claims. We address this issue de novo. *See Hook*, 38 F.3d at 780. In *Pennhurst*, the Supreme Court held that sovereign immunity barred federal courts from hearing state law claims brought in federal court against state entities and state officers sued in their official capacities, including claims for injunctive relief under state law. *See Pennhurst*, 465 U.S. at 117. The Court reasoned that such claims could not be maintained against the state entity because the supplemental jurisdiction doctrine did not abrogate state entities' sovereign immunity. *See id.* at 119-21. Accordingly, the reasoning in *Pennhurst* is applicable only if sovereign immunity is at issue—it is not applicable where the supplemental state law claims are asserted against a defendant who is not entitled to sovereign immunity. *See id.*; *see also, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 325 n.13 (5th Cir. 2008) (explaining that *Pennhurst* established that federal courts may not "hear[] state law claims against state officials in their official capacity under supplemental jurisdiction").

As we explained above, the faculty members sued in their official capacities for monetary relief were entitled to invoke the state's sovereign

immunity, and the district court correctly dismissed the claims against them on those grounds. However, that does not mean that those defendants were entitled to invoke sovereign immunity for all of Kermode's claims. There are two well-settled ways in which a plaintiff may sue state officers without implicating the state's sovereign immunity: one is to file suit against the state officers in their official capacities in which the only relief sought is federal prospective injunctive relief under *Ex parte Young*;[6] the other is to file suit against the state officers in their individual capacities for money damages to be paid by the defendant individually and not by the state.[7] Because neither *Ex parte Young* claims nor individual-capacity claims implicate a state's sovereign immunity, *Pennhurst*, which applies only to defendants entitled to sovereign immunity, is inapplicable to those claims.

Kermode's reliance on *Pennhurst* is misplaced. His supplemental state law claims were asserted against Dr. Farley in his individual capacity. He thus sought to impose personal liability on Farley rather than on the Medical Center, and Farley was not entitled to raise the defense of sovereign immunity. *See Graham*, 473 U.S. at 165. *Pennhurst*, which involved a suit against a state officer in his official capacity, is therefore inapposite. *See Pennhurst*, 465 U.S.

---

[6] *See, e.g.*, *Bd. of Trustees v. Garrett*, 531 U.S. 356, 374 n.9 (2001); *Ex parte Young*, 209 U.S. at 155-56. The *Ex parte Young* exception to a state's sovereign immunity rests on the premise (or legal "fiction") that when a federal court enjoins a state official's illegal or unconstitutional actions, the official is deemed to be stripped of state authority and is therefore not treated as the state for sovereign immunity purposes. *E.g.*, *Va. Office for Prot. & Advocacy*, 131 S. Ct. at 1638.

[7] Unlike official-capacity claims, individual-capacity claims "seek to impose personal liability[,]" not liability against a state entity. *Graham*, 473 U.S. at 165. Because a suit against an officer sued in his or her individual capacity is not a suit against the state itself, sovereign immunity is not a defense in such individual-capacity suits—unless an individual-capacity claim in effect seeks money from the state rather than the individual defendant. *See, e.g.*, *Graham*, 473 U.S. at 165-67; *Ford Motor Co. v. Dept. of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents,* 535 U.S. 613 (2002). Nothing in the record or the parties' briefing indicates that this exception would apply in this case.

No. 12-60010

at 121; *McIntosh*, 540 F.3d at 325 n.13. Kermode's supplemental state law claims are not barred under *Pennhurst*, and, accordingly, the district court was not obligated to dismiss the supplemental individual-capacity claims against Farley despite having dismissed other claims on sovereign immunity grounds.

**B.**

Having found *Pennhurst* inapplicable, we assess the propriety of the district court's assertion of jurisdiction over the state law claims with reference to the basic rule governing supplemental jurisdiction—i.e., whether the state and federal claims have a "common nucleus of operative fact," *Gibbs*, 383 U.S. at 725, which we review for abuse of discretion, *Enochs*, 641 F.3d at 158.

Kermode's federal constitutional claims against the other faculty members under *Ex parte Young* were and are still pending in the district court, and those claims are not barred by sovereign immunity. *See, e.g.*, *Va. Office for Prot. & Advocacy*, 131 S. Ct. at 1638; *Garrett*, 531 U.S. at 374 n.9; *Ex parte Young*, 209 U.S. at 155-56. Kermode does not dispute that the federal constitutional claims and the state law individual-capacity claims arose from the same course of conduct and events, namely, the faculty members' alleged wrongdoing in connection with the investigation and proceedings leading up to Kermode's termination. We conclude that the two claims have a "common nucleus of operative fact." *Gibbs*, 383 U.S. at 725. The district court properly had federal-question jurisdiction over Kermode's *Ex parte Young* claims and supplemental jurisdiction over the state law claims; it did not abuse its discretion by retaining jurisdiction over the state law claims.

On appeal, Kermode argues only that the district court lacked jurisdiction to rule on his supplemental claims, not that the district court erred on the merits of those claims. Our review is therefore limited to the jurisdictional issue, and we affirm.

14

No. 12-60010

## V.

Finally, Kermode argues that the district court erred in denying his motion for discovery sanctions for the defendants' alleged spoliation of evidence. Kermode sought various remedies, including requests for entry of default judgment and an adverse evidentiary inference against the defendants, as sanctions for the defendants' alleged spoliation of emails exchanged by Kermode and Park. The district court denied Kermode's motion because it was untimely and because Kermode failed to establish that any evidence had been destroyed in bad faith. Although Kermode has appealed the district court's ruling on his motion, we conclude that the ruling was not within the scope of the district court's certification under Rule 54(b), which certified for appeal the district court's disposal of "all of [Kermode's] claims against UMMC, as well as his claims for damages against individual defendants Jerry Farley, James Dorn, Daniel Jones, and Helen Turner." As the present appeal is interlocutory, we decline to reach the district court's discovery rulings, but we do so without prejudice to Kermode's ability to reassert the issue on appeal taken from a final judgment in this case.

## VI.

For the foregoing reasons, we AFFIRM the district court's order granting partial summary judgment to the Medical Center and the individual defendants.