NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-694

JOSEPH NED HENRY, JR., ET AL.

VERSUS

UNION PACIFIC RAILROAD COMPANY

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 82540, DIV. B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Shannon J. Gremillion, Judges.

Cooks, J., concurs in the result.

REMANDED.

William Hector Howard, III
Paul Lee Peyronnin
Baker, Donelson, Bearmann,
        Caldwell & Berkowitz, PC
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
(504) 566-5200
COUNSEL FOR DEFENDANT/APPELLANT:
        Union Pacific Railroad Company

**John C. Guillet**
**Corkern, Crews & Guillet**
**P. O. Box 1036**
**Natchitoches, LA 71458-1036**
**(318) 354-1377**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Joseph Ned Henry, Jr.**
    **John Patrick Henry**
    **Doris K. Henry**

**GREMILLION, Judge.**

The Union Pacific Railroad Company (UP) appeals the trial court's grant of summary judgment in favor of Joseph Ned Henry, Jr., John Patrick Henry, and Doris K. Henry (the Henrys), which ordered UP to restore a railroad crossing that facilitated access to the Henrys' land in Natchitoches Parish.

## FACTS

On May 22, 1901, Mr. M.R. Payne of Yazoo County, Mississippi, granted a right of way to The Texas & Pacific Railway Company (T&P) over land he owned in Natchitoches Parish. There is no dispute that Payne is the Henrys' ancestor in title, nor that T&P is UP's ancestor in title. The right of way was granted in consideration of $1.00 plus other good and valuable consideration, including:

> [F]or the further consideration that said Railway Company agrees and binds itself so to construct its line of railway as to not injure the natural drainage of said grantor's land, and to construct through its tracks such artificial drains and culverts as a necessary and proper for that purpose; and further, to provide crossings over the said railway as points on said grantors [sic] property necessary for convenient passing over the property, not nearer together than half a mile apart.

This private crossing was closed by UP on December 6, 2007. On July 14, 2009, the Henrys filed suit in Natchitoches Parish in which they outlined the chain of title between themselves and Payne and prayed that UP be required, at its expense, to restore the crossing. UP removed the matter to federal district court for the Western District of Louisiana, Alexandria Division, asserting that the federal court could properly exercise jurisdiction based upon complete diversity of citizenship. The federal court remanded the matter to state court. UP then answered the suit, and the Henrys filed a motion for summary judgment. The trial court granted the Henrys' summary judgment on March 3, 2012, from which UP took this appeal.

## ASSIGNMENTS OF ERROR

UP asserts the following as error:

1. The trial court erred in ordering Union Pacific to restore a non-authorized crossing.

2. The trial court erred in its apparent belief that the plaintiffs have an enforceable right to a crossing.

3. Summary judgment is inappropriate on the question of intent.

## ANALYSIS

Courts of appeal review summary judgments de novo applying the same analysis as the trial court. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Those articles require the mover to demonstrate an absence of genuine issues of material fact based upon the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if the mover is entitled to judgment as a matter of law.

The Henrys argued in the motion that state contract law is not pre-empted by federal law governing railroads. *Franks Inv. Co. LLC v. Union Pacific R.R. Co.*, 593 F.3d 404 (5th Cir. 2010). The *Franks* case involved a very similar factual scenario as the present matter. Further, the Henrys argued that UP was prohibited under La.R.S. 48:394 from closing the crossing without obtaining permission from the Louisiana Public Service Commission after a public hearing.

UP countered that the constitutionality of Section 394 was pending on appeal before the United States Fifth Circuit Court of Appeals. *See Union Pacific R.R. Co. v. La. Public Serv. Comm'n*, 662 F.3d 336 (5th Cir. 2011). It further argued that Section 394 was enacted by Act 530 of the 2008 Regular Session after the subject crossing had been closed; hence, the statute could not apply to the closing. Further, UP argued that the deed between T&P and Payne conveyed to

2

T&P "fee-simple" title and created a personal servitude to Payne and not a predial servitude; thus, UP owed no obligation to the Henrys to maintain the crossing because personal servitudes do not pass with title. Lastly, UP attached to its opposition the affidavit of Mr. Paul Rathgeber, its Manager of Industry and Public Projects, who attested that circumstances often necessitate the closing of a private crossing (although he identified none that applied to the present case), that private crossings represent a considerable maintenance expense, and that another crossing exists that is less than a half mile from the one that was closed.

The Henrys filed a reply brief that argued that the Payne/T&P deed created a personal right of use in favor of T&P. Because UP continued to maintain the crossing, it evidenced its need to continue operation of the right of way across the Henry property, the exchange for which was maintaining the crossing. In support, the Henrys attached the affidavit of Mr. Joseph Ned Henry, Jr., who attested that the crossing that was left by UP was constructed in 1948.

The trial court ruled that the terms of the deed required UP to maintain the original crossing. It ordered UP to reinstall the crossing at its expense.

On appeal, UP made no new argument. If the deed conveyed a personal servitude, it did not inure to the benefits of Payne's ancestors in title. The deed could not have created a predial servitude, because predial servitudes cannot create affirmative obligations, such as maintaining the crossing. *See* La.Civ.Code art. 651.

The question of whether a deed involving a railroad "right of way" conveys ownership or a servitude represents no novel issue to Louisiana jurisprudence. It is not required for purposes of this matter that we recount the history of railway construction in Louisiana; but a few seminal cases do shed light on the appropriate analysis of the facts before the court.

3

In *Arkansas Improvement Co. v. Kansas City Southern Railway Co.*, 189 La. 921, 181 So. 445 (1938), the plaintiff instituted a petitory action against the railroad and other defendants to determine whether a parcel of Caddo Parish land was owned by the company, which claimed that it had conveyed a mere servitude to the railroad's ancestor in title. The 1905 deed in question provided in pertinent part:

> Know all men by these presents, That the Arkansas Improvement Company, a corporation duly organized under the laws of the State of Missouri, and domiciled at Many, in the Parish of Sabine, Louisiana, by E. O. Haight, President, he being thereto duly authorized, for and in consideration of the sum of One Dollar (1.00) to it in hand paid by the Kansas City, Shreveport and Gulf Railway Company, a corporation duly organized under the laws of the State of Louisiana, and domiciled in the City of Shreveport, Louisiana, has Remised, Released, Quit-claimed and Conveyed, and by these presents does Remise, Release, Quitclaim and Convey unto the said Kansas City, Shreveport and Gulf Railway Company, its successors and assigns, for additional right-of-way, all that lot or parcel of land situated in the Parish of Caddo…
>
> To have and to hold, the above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging, to the Kansas City, Shreveport & Gulf Railway Company, its successors and assigns, for railroad purposes, forever.

*Id.* at 446-47.

The supreme court noted that the language bore "all the earmarks of an outright sale of the land in fee." *Id.* However, the supreme court also felt that the provision was ambiguous, and considered, as the trial court had, parole evidence showing that Arkansas Improvement Company had not paid property taxes on the land since it executed the 1905 deed, nor had it exercised any other acts of possession over the property. The language of the deed and the parole evidence demonstrated that the intent of the parties was to convey ownership rather than a servitude. In doing so, the court recognized the principle enunciated in *Johnson v. Valdosta, Moultrie & Western Railway Co.*, 169 Ga. 559, 150 S.E. 845 (1929), that

4

use of the term "right of way" in a railroad deed is more descriptive of the use of the land than definitive of the nature of the rights conveyed. Rather, the language of the instrument as a whole determines the nature of the conveyance.

The Louisiana Supreme Court in *Texas & Pacific Railway Co. v. Ellerbe*, 199 La. 489, 492, 6 So.2d 556, 557 (1942), stated, "The jurisprudence is well settled that the conveyance of a right of way is to be regarded as a mere servitude and not as a transfer of a fee-simple title unless the deed itself evidences that the parties intended otherwise."

In *Rock Island, Arkansas & Louisiana Railroad Co. v. Gournay*, 205 La. 125, 17 So.2d 8 (1943), the deed provided that the defendants' ancestor in title conveyed, sold, and delivered to the railroad, its successors, and assigns, in perpetuity, a 100-foot-wide strip of land in St. Landry Parish. It further allowed the railroad the right to make cuts, embankments, and other earth works within the 100-foot area for the construction of the railroad. The deed also recited that the consideration received was in full compensation for the property taken and damage done or to be done to the property during the course of construction. The court reasoned that if the deed intended to convey ownership of the land in question, the provision regarding compensation would be rendered superfluous, as the railroad would not owe itself for damage done to property it owned. Therefore, the court reasoned that the deed was intended to establish a servitude in favor of the railroad.

The language in the present instrument provides that Payne sold, conveyed, and set over a right of way. The act further provided, "To have and hold the said property or right of way unto the said The Texas and Pacific Railway Company, its successors and assigns forever." Finally, the act provided:

> It is understood and agreed that if the said grantee, The Texas and Pacific Railway Company, or its successors and assigns, shall not construct its said line through the said property within two years from

5

the date hereof, then the said grantor shall have the right to dissolve and set aside this conveyance by due proceedings at law.

The act clearly conveys a right of way, and provides that if the right of way was not exercised within two years, Payne could have dissolved the conveyance. Without clearer intention to convey ownership, we are constrained to hold that the 1901 act did not convey ownership to T&P.

UP argues that if the instrument created a predial servitude in Payne's favor, it cannot be compelled to build or maintain the crossing. It bases this argument on Louisiana Civil Code article 651. This argument, however, is based on a partial reading of article 651, which provides that "The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it." However, the article goes on to state, "He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate." *Id.*

We note that railroad grade crossing and improvement is largely regulated by the state. Among the statutes governing elimination of railroad grade crossings is La.R.S. 48:390. Act 718 of the 2008 Regular Session amended Section 390 to add subsection (G). Subsection (G)(1) provides:

> Notwithstanding the provisions of this Section, R.S. 48:390.1, or any other provision of law or rule to the contrary, the closing of a railroad grade crossing by a railroad company shall not be considered interruption for purposes of acquisitive prescription, and any crossing closed by a railroad since January 1, 2006, shall be re-opened upon the attainment of thirty years peaceful and otherwise uninterrupted use or possession of servitude of use or passage across the railroad grade crossing with or without just title.

The act expressly applies retroactively. *See* 2008 La. Acts No. 718, § 2. Therefore, notwithstanding that the subject crossing was closed before Act 718 became effective, it would seem to nonetheless require UP to re-open the subject

6

crossing, over which the owners of the Henry land had exercised passage since 1901, well over thirty years.

This issue was not raised at the court below. In supplemental briefs, UP argues that Section 390 unconstitutionally impairs its contractual obligation. This section represents a requirement by law to maintain the crossing "in suitable condition for the exercise of the servitude due to the dominant estate" for purposes of Louisiana Civil Code article 651. Therefore, we remand the matter to the trial court to allow UP to present its constitutional challenge to the provision and give proper notice pursuant to La.Code Civ.P. Art. 1880.

**REMANDED.**